

# NEUROPSYCHOLOGICAL
## — S C I E N C E S —

## Competency to Stand Trial Examination Report

**February 13, 2018**

The Honorable James R. Klindt
United States Magistrate Judge
300 North Hogan Street
Suite 5-111
Jacksonville, Florida 32202

    RE:   United States of America v. Neil Andre Butler
            Case No. 3:17-cr-186-J-39JRK

Dear Judge Klindt:

Per your request for a Competency to Proceed Examination pursuant to Title 18, USC § 4241 and 4247, I evaluated Mr. Neil Butler (46 y.o. African-American Male) on 01/30/18 at the Baker County Correctional Facility in Macclenney, Florida.

In preparing this report, I reviewed the following materials and conducted the following procedures:

1.) Order for Competency to Stand Trial Examination.
2.) Brief Telephone Call with Defense Counsel.
3.) Face-to-Face Interview with Mr. Butler at Baker County Jail on 01/30/18.
4.) Psychological Testing of Mr. Butler on 01/30/18 which consisted of the following:
    a. Structured Competency to Stand Trial (CST) Interview.
    b. Evaluation of Competency to Stand Trial – Revised (ECST-R).

### I. CURRENT CHARGES / LEGAL STATUS

Based on the indictment provided by defense counsel, Mr. Butler has been charged with four counts of "Intent to defraud."

CONFIDENTIAL FORENSIC PSYCHOLOGICAL EVALUATION

Butler, Neil A.

## II.   FINDINGS OF CURRENT EVALUATION

*It is my opinion, with a reasonable degree of psychological certainty, that Mr. Butler has an adequate understanding of the nature and consequences of the proceedings against him and that he is presently capable of properly assisting in his defense.*

## III.   NOTIFICATION / CONSENT

At the beginning of the evaluation, notification was made to Mr. Butler about the nature, purpose and non-confidential aspects of the current evaluation. He was informed that a report would be written and shared with the court (Judge Klindt), defense counsel (Ms. Darcy Galnor), and the U.S. Attorney's Office (Mr. Michael Coolican). Mr. Butler was informed that the report would not be confidential and that this examiner may be called to testify at a hearing or trial. Finally, he was advised that a doctor-patient relationship did not exist in the context of the current evaluation. Mr. Butler agreed to the examination but said he was participating under "Threat, duress, and coercion" but that he would participate in the examination. He indicated that he understood the limits of confidentiality and he provided informed, written consent for the evaluation in the context of this court-ordered examination.

## IV.   FACE-TO-FACE INTERVIEW WITH MR. BUTLER AT BAKER COUNTY JAIL ON 01/30/18.

*Birth, Developmental and Childhood History*: Mr. Butler was born on 08/18/1971 in Chicago, Illinois. He said his parents were not in a relationship together at the time of his birth. He denied that his mother experienced any complications with her pregnancy or delivery of him. Mr. Butler reported being the middle child of five children born to his mother. Mr. Butler said he acquired his developmental language and motor milestones on time. He said his childhood was "I would say fair to good. I was predominantly raised in a family setting." He said he was primarily raised by his mother and grandparents in Chicago and his relationship with his dad was poor. He said his relationship with his father "never existed" but that his childhood was supplemented by uncles and other family members and other elements of his community.

*Educational and Occupational History*: Mr. Butler said he took "special classes" during elementary school "all the way up to high school." He specifically said he "always had to go to this one class for forty-five minutes per day and we'd have to sit and read books and watch videos." He said that was the only "different" class he took and that his teacher was a "special teacher for that situation – like a social worker teacher. Now that I think about it I think it had to do with our level of poverty. I think that had something to do with it." He later agreed that his was an enrichment class and not a class for children who struggled academically. He denied any history of Attention Deficit Hyperactivity Disorder (ADHD) or Learning Disorder. He said he completed the tenth grade at Argo Community High School in Cook County, Illinois. During his junior year, he said he was involved with a "theft" when someone used his locker to store stolen goods. Mr. Butler was expelled following an investigation into the incident. He said he completed his GED later in life when he was in the U.S. Navy.

When Mr. Butler was 17 years-old, he joined the U.S. Navy (ASVAB Score ~ 65-68, according to him) and completed basic training at Great Lakes, Illinois and then attended heavy equipment operator school

CONFIDENTIAL FORENSIC PSYCHOLOGICAL EVALUATION

Butler, Neil A.

in Gulf Port, Mississippi. After graduating from heavy equipment operator school, he was stationed in Gulf Port with a construction battalion. He said he was a Sea Bee and served in a Sea Bee Battalion. He served in the U.S. Navy for seven years and was honorably discharged in 1996 at the rank of Petty Officer Second Class (E-5). He said he deployed to the middle-east for Operation Desert Shield/Storm in approximately 1991/92. He denied direct exposure to combat operations while deployed.

After being discharged from the Navy in 1996, Mr. Butler worked as a "Floor Operator" selling contact lenses for Johnson and Johnson and later as a manager for Race Track store. He attended school for training in cosmetology at the Euro Hair Design School from 1998-1999 in Jacksonville, Florida. He graduated from cosmetology school in 1999 and then began working in salons as "an independent operator." He was working the Chop Shop Barbershop in Jacksonville, Florida. He was working fulltime (40-50 hours each week) at the time he was arrested on his current charge(s). He reported having had one additional employee at his barber shop. In addition to cosmetology, Mr. Butler said he also "flipped houses" and that he "flipped" three houses last year.

*Medical/Psychological, Relational and Legal History*: Mr. Butler reported a medical history of (1) "Degenerative Bone Disease" of the low back (L4-L5); (2) pain from a cervical neck injury that occurred in 2013. He receives a small disability check from the VA related to a 20% service-connected disability for Degenerative Bone Disease. He denied any history or acquired neurological diseases such as brain trauma, stroke, or tumor. He denied taking any medications at the present time. He said his VA doctor in Jacksonville prescribed Gabapentin and Naproxen and an unknown muscle relaxer for back pain. He denied that he was prescribed any psychiatric medications prior to his arrest.

Mr. Butler denied having ever been either voluntarily or involuntarily hospitalized in an inpatient psychiatric hospital/facility. He denied having ever been diagnosed with any mental illness over the course of his lifetime. He denied having attended psychotherapy or counseling in the past but said he was prescribed antianxiety medication on two brief occasions over the last six years for anxiety related life stress and unlawful detention in approximately 2012. He said 2-3 months ago he went to the VA and reported that he was experiencing anxiety due to life stress and "colorable charges" and he requested antianxiety medication. He was given a prescription and he took the medication one time and he did not like how it made him feel ("Numb and void") and stopped taking the medication.

Mr. Butler denied the use of alcohol; however, he said he uses cannabis as his religious sacrament "probably a good once a day" and that he last used cannabis was the day before his arrest. He feels that by being unable to use cannabis as his religious sacrament that "That is a deprivation of my rights under colorable law under freedom of religion." He denied the use of other drugs such as cocaine, heroin, etc.

Mr. Butler has been married to Zanthia for twenty-five years and he described their relationship as "Doable, manageable." He said he has four children with Zanthia (Jacksonville), two boys with Lisa (North Carolina), a son with Keshinda (South Carolina), and a daughter with LaPorshe (Jacksonville). He said he is legally married to Zanthia but has a "faith relationship" with Lida, Keshinda, and LaPorshe. He described a faith relationship as a relationship "according to my faith as a Hebrew." At the time of his current charges, he was living at home with Zanthia in one location and also with LaPorshe in Jacksonville at another location. He said his relationship with all his children was "Well" and that he, Zanthia, Lisa, Keshinda, and LaPorsha all get along well.

CONFIDENTIAL FORENSIC PSYCHOLOGICAL EVALUATION

Butler, Neil A.

Mr. Butler's mother (Christine) resides in Chicago, Illinois and Mr. Butler said his relationship with his mother is "outstanding." Mr. Butler's father is deceased, but he was unsure when this occurred. Mr. Butler's biological father reportedly died of a "heart attack."

## V. BEHAVIORAL OBSERVATIONS AND MENTAL STATUS EXAM OF MR. BUTLER.

Mr. Butler was brought to the examination room by a correctional officer. Mr. Butler was dressed in typical jail attire. He claimed he was being illegally held in the jail but after a few minutes of discussing his legal beliefs, we discussed the purpose of the evaluation and he deferred to the examiner to lead the examination. Rapport was established and a few minutes and maintained throughout the evaluation but he became dogmatic about his legal beliefs when discussing legal-related issues only. He otherwise was very cooperative and pleasant. He was alert and oriented to person, place and time. He understood the reason for the evaluation. He was cooperative and responded appropriately to questions but was sure to include his position about his legal beliefs when asked questions about the traditional legal process. He denied auditory or visual hallucinations. Thought processes were goal-directed and linear. He was emphatic about his legal beliefs but did not appear to manifest delusions or poor reality testing. He reported his mood as "Neutral" but that he was frustrated about his current charges and he feels he is "under assault through an administrative commercial proceeding under threat, duress, and coercion without my consent." His affect was euthymic unless discussing legal matters and then his affect was mildly-moderately reactive. His sleep was reported as "In this animal cage? Nil." He reported his sleep as sporadic and his appetite as "In survival mode." He complained about the quality of food in jail. He denied suicidal or homicidal ideation.

## VI. EVALUATION OF COMPETENCY TO STAND TRIAL:

It is this examiner's opinion, with a reasonable degree of psychological certainty, that Mr. Butler *has an adequate understanding of the nature and consequences of the proceedings against him.* The following evidence supports this opinion:

1. Appreciation of the charges or allegations against the defendant: Mr. Butler demonstrated an **adequate** understanding and appreciation of the charges and allegations against him. When asked his charges, he stated, "Intent to defraud. Four counts." *Mr. Butler has an adequate understanding of the charges or allegations against him.*

2. Appreciation of the range and nature of possible penalties which may be imposed in the proceedings against the defendant: When asked about possible penalties that may be imposed, Mr. Butler said the charges are serious and that they were felonies. He knew incarceration was a possible penalty and said his first defense attorney (Mr. Rosenblum) told him that he was possibly looking at serving "24-27 months and he did a calculation." He knew the death penalty was not a possible penalty. *Mr. Butler appears to have an adequate appreciation of the possible penalties for the charges.*

3. Understanding of the adversarial nature of the legal process: *Mr. Butler appears to have an adequate understanding of the adversarial nature of the legal system and the role of the participants.* Mr. Butler described the following characteristics of the judge ("To be non-biased and rule on the law." Mr. Butler said "In a judicial capacity, he is neutral. He rules according to

CONFIDENTIAL FORENSIC PSYCHOLOGICAL EVALUATION

Butler, Neil A.

> the law and renders judgments and order in accordance to the law."), <u>jury</u> ("To determine innocence or guilt according to the facts and the law." Mr. Butler said he understood the jury to be neither for him nor against and that they were "neutral" and "They are supposed to be a jury of my peers."), <u>witnesses</u> ("Someone who has first-hand knowledge of the situation." He said witnesses may be eye-witnesses or have personal knowledge of the situation in question.". He said, "You can have witnesses for you and witnesses against you."), evidence ("Facts or material items relating to the situation – the situation in question, concerning the case." He understood that evidence may be for or against "you."), <u>prosecutor</u> ("To present the case against you." He understood the prosecutor was against him.), <u>defendant</u> ("The one defending himself against the charges from the prosecutor." In his case, he said "The juristic person, Ens Legis NEIL ANDRE BUTLER, CTV TRUST."), and <u>defense counsel</u> ("To defend against the charges of the prosecutor." He understood defense counsel was for him.).
>
> 4. <u>Appreciation of the range of plea options:</u> Mr. Butler understood basic court-related terms such as <u>guilty</u> ("An admission to which one is charged with" and "you actually did what was accused."), <u>not guilty</u> ("You didn't do what was charged."), nole contendre ("You are not contesting the charges. It is not an admission of guilt."), and <u>plea bargaining</u> ("Something you work out between your defense counsel and the prosecutor offering to plea out for a lesser charge or lesser consequences."). *Mr. Butler appears to have an **adequate** appreciation of the range of plea options.*

It is this examiner's opinion, with a reasonable degree of psychological certainty, that Mr. Butler has an **adequate** <u>ability to assist properly in his defense</u>. The following evidence supports this opinion:

> 1. <u>Capacity to disclose to his attorney facts pertinent to the proceedings at issue:</u> Mr. Butler accurately indicated that he was recently appointed a new attorney by the court. He was unable to recall her name but said his previous attorney was Mark Rosenblum. Mr. Butler said he requested Mr. Rosenblum not work with him any longer because they had "irreconcilable differences" and Mr. Rosenblum filed the motion with the court. According to Mr. Butler, the irreconcilable differences were related to Mr. Rosenblum recommending one strategy and Mr. Butler desiring another strategy. Mr. Butler said he has had a one telephone conversation with his newly appointed defense attorney and that he saw her in the courtroom two times (upon appointment and again at the bond hearing). Mr. Butler has had no problems with his new counsel but he said he may have the same problem with his new attorney (Ms. Galnor) if the legal issues that led to his dismissal of his previous defense attorney were raised again. He said he wants the charges dismissed because "They don't have a sworn affidavit of an injured party or someone who took a loss or damage as a result of my actions." "Under judicial law, proceedings, and rules – no injured party, no case - in an Article III court of record." Mr. Butler believes he is in an administrative court ("Article I court) under admiralty maritime jurisdiction and the Government is trying to move forward with the case without my consent under threat, duress, and coercion and the judge is receiving compensation in the form of a commission." *Although Mr. Butler has his own interpretation of the legal context in which his legal proceedings are occurring that results in him becoming frustrated, he appears to have an **adequate** capacity to disclose to his attorney facts pertinent to the proceedings.*

CONFIDENTIAL FORENSIC PSYCHOLOGICAL EVALUATION

Butler, Neil A.

2. <u>Capacity to testify relevantly and coherently:</u>  Mr. Butler has a history of anxiety but he is not presently taking any psychotropic medications. He has strong opinions about "...the way of life of the Hebrew faith which is self-government" and his belief about his rights regarding the discharge of debt. *Although he has fixed beliefs regarding these and other similar governance issues, he appears to have an **adequate** capacity to testify relevantly and coherently at the present time.*

3. <u>Ability to manifest appropriate courtroom behavior:</u>  Mr. Butler was tangential and emotionally reactive during the evaluation when issues pertaining to his legal case were discussed. He said he was being coerced (e.g., when they ask you to state your name for the record, they create "joinder" where they join me the flesh and blood to the juristic trust – the make me one with it and therefore making me commercially liable for all these unrevealed contracts. They don't understand the nature of these things and they act like we are wrong. That's gross negligence on their part. You can't drag me into this administrative court! They don't understand these things and are trying to hold me commercially liable for something I shouldn't be charged with in the first place!" Mr. Butler understood contempt of court and when asked if he could stand up and shout in the courtroom he said, "Of course not." *Mr. Butler appears to have an **adequate** ability to manifest appropriate courtroom behavior.*

## VII.   SUMMARY AND OPINION

Mr. Neil Butler underwent a Competency to Proceed Evaluation on 01/30/18 at the Baker County Correctional Facility in Macclenney, Florida.

Results from the evaluation indicate that Mr. Butler has no significant mental health history and is not presently taking any medications. Mr. Butler holds strong beliefs involving governance and legal proceedings that are at odds within the contemporary justice system. Although his beliefs appear atypical, they are the same or similar to the beliefs of 100,000-200,000 Sovereign Citizens in the United States of America. Some of the beliefs held by Mr. Butler appear to coincide with commonly held Sovereign Citizen beliefs of common law, admiralty law, and redemption theory.

Mr. Butler does not appear to be mentally ill, instead, he feels he is being wronged by an unjust legal system that has no jurisdiction in his legal matter. Because Mr. Butler believes he is being wronged, he is likely to continue rejecting the current proceedings and the courts legal jurisdiction in his legal case. *Despite the challenges associated with adjudicating Mr. Butler, it is my opinion, with a reasonable degree of psychological certainty, that Mr. Butler has an adequate understanding of the nature and consequences of the proceedings against him and that he is presently capable of properly assisting in his defense.*

*[signature]*

Jason A. Demery, PhD, ABPP-CN
Licensed Psychologist
Board Certified in Clinical Neuropsychology